Hitchcock;, C. J.
The facts of this case, as disclosed by the bill, *387 answers, exhibits, and testimony, are substantially as follows: On January 12, 1835, the defendant, Stout, purchased of the executors of Joseph Higbee, a tract of land in Coshocton county, the same being a part of the first quarter, fifth township, fifth range United States military land, for the consideration of nine hundred and. thirty-two dollars and fifty-five cents. In the contract of sale and purchase, the land is described by metes and bounds, and is sold for two hundred and fifteen acres and thirty-five hundredths, “be the same more or less.” Subsequently the land was conveyed to Stout. On May 28, 1844, Stout, by contract, sold this same land to Ketchum, the complainant, for the consideration of three thousand dollars. In this contract the land is described as “ situate in Lafayette township, Coshocton county, Ohio; being in the first quarter of the fifth township and fifth range, and bounded as follows : On the north, by the Tuscarawas river; on the east, by land now owned by Daniel Miller ; on the south, by the leading road; on the west, by land now owned by Isaac W. Miller, Thomas M„ Wiggins, and Thomas Miller, estimated to contain about two hundred and fifteen acres, or a little upward.” At the time of entering into this contract, the comjfiainant, Ketchum, was residing, and for years had resided, near this land, upon the opposite side of the road, and the lines of the tract appear to have been notorious» Stout was residing in a different township, but had previously occupied the land by a tenant.
The provision of the contract as to payments is as follows: *“The said party of the second part (Ketchum) is to pay the said sum of $3,000, as follows: he is to pay off three certain judgments, now standing in the court of common pleas, against the said party of the first part (Stout)—one in favor of Lawrence and Trimble, one in favor of William R. Thompson & Co., one in favor of John Miller—and such other amounts and claims as are a lien on said land. In making payment, as aforesaid, the said party of the second part is not to pay interest on five hundred dollars of said purchase money until from and after June 1, 1845 ; and he is not to pay interest on another five hundred dollars of said purchase money until from and after June 1, A. d. 1846. The remaining two thousand dollars of said purchase money is to draw interest until applied to the payment of said judgments and lien. After paying off the amount of said judgments and liens, out of the said three thousand dollars purchase money, as *388 aforesaid, the said party of the second part is to have time to pay the residue thereof, as aforesaid, for the ono-half residue, until June 1, 1846, and for the other half of such residue till Juno 1, 1847, to the party of the first part.” It is further provided that Ketehum was to pay the taxes accruing subsequent to the contract; and, further, that he should have the possession, with certain exceptions, on the 1st day of August next after the date of ther contract, and full possession of the entire premises on October 1st. He took possession accordingly, and has remained in possession ever since. In September, 1844, he paid to Trimble and Lawrence, orr their judgments, three hundred dollars. In Januai’y, 1845, he caused the land to be surveyed ; and according to the survey then, made, the quantity within the metes and bounds was found to be only one hundred and sixty acres, instead of two hundred and fifteen, as estimated—falling short forty-nine acres. There is an allegation in the bill, that the defendant, Stout, represented the quantity of land to be two hundred and fifteen acres, and that it was taken upon this representation. This is denied in the answer, and *upon this point there is no proof. It is apparent that Stout purchased the lands, by metes and bounds, as containing two hundred and fifteen acres “ more or less,” and there is nothing in- the case to show that, until after he had sold to comjdainants, he ever suspected there was any mistake as to the quantity.
After the payment of the three hundred dollars, before referred to, as made upon one of the judgments named in the contract, the complainant made no further advances toward the performance of that contract. He continued in possession of the property, however, without taking any steps to rescind the contract. 'It is only by inference that we arc led to the conclusion that he even notified the defendant of the deficiency in the land. Being thus in possession, in Juno, 1847, he suffered the land to be sold on the judgment of Thompson & Co., one of the judgments named in the contract—purchased the same in at sheriff’s sale for the consideration of $2,215, which was applied, together with three hundred dollars before referred to, in discharge of the judgments specifically named in the contract. This sale was confirmed by the court, a deed ordered and executed by the sheriff, under which complainant now claims title to the land. In addition to these judgments, the complainant paid fifty-five dollars and fifty cents to relieve the land *389 from taxes assessed before his purchase, and also eighteen dollars and sixty-three cents, to relieve the same from the liens of other judgments, not specifically named in the contract.
It is shown by the evidence in the case, that at the time of sale by Stout to the complainant, the tract of land was well known in the neighborhood, with its boundaries, and estimated to contain two hundred and fifteen acres, and a little more; and that as it lay it was worth three thousand dollars, without taking into view the quantity. On June 15, 1843, the complainant himself, with two other freeholders, was called upon by the sheriff of the county to appraise the same land, and appraised it at four thousand dollars. This, however, was before the survey, which took place in January, 1845. Again, the same land was appraised on August 18, 1846, Sunder the direction of the sheriff, by three other freeholders, and was estimated by them to be worth three thousand three hundred and twenty dollars. This was after the deficiency in quantity bad been ascertained; and it was, as I suppose, under this appraisement that the complainant purchased at sheriff’s sale.
At the June term of the court of the common pleas of Coshocton county, a. d. 1849, the defendant Stout commenced an action of covenant, upon the aforesaid contract, against the complainant, to recover the balance of purchase money still due. The same matter was set up in defense in that case as is now set up in this, for relief. • .
This case was tried at the March term of the court, a. d. 1850, and a judgment was rendered, in favor of the then plaintiff, for ten hundred and thirty-six dollars and sixteen cents damages and costs.
The complainant admits, in his bill, that upon the trial of the ■case, he received credit for all he had paid upon the judgments, and also for taxes.
This bill is filed for the purpose of enjoining th8 judgment so as aforesaid rendered, and the sole ground of relief relied on, is, that the quantity of land as sold and described by metes and bounds, is not equal in quantity to the estimated number of acres. There is no pretense that there has been any fraud, or even misrepresentation. There is no pretense that the defendant had any better knowledge as to the quantity of the land, than had the complainant. There is no pretense but what the boundaries were well *390 known and understood. Nor can it be pretended but that the complainant had equal means of ascertaining the exact quantity, before the purchase, as had the defendant. In fact, his position was such that he would bo more likely to suspect a deficiency than would the defendant; for he resided, and had for some time resided, adjoining the land, while the defendant resided in a different township, and there is no evidence in the case that the defendant ever had any possession except by his tenants. Still the complainant *agreed to purchase the entire tract, and for the stipulated price. Not at so much per acre, but for a round sum to be paid for the whole; and that whole was estimated “ at about two hundred and fifteen acres and something more.” But it is insisted by complainant’s counsel that he is entitled to relief, and the position is assumed, that, although land is sold by metes and bounds, at an estimated quantity, be the same more or less, if the land falls short of that estimated quantity, the purchaser is entitled to an abatement, as fully as he would have been had the land been sold by the acre. It is admitted that in such case he can have no relief at law, but that in chancery he may bo relieved.
It might be admitted, that where the vendor represents the tract so sold to contain more land than what is within the boundaries set forth, relief might be granted; still, it would not settle this case, for there is no evidence of any representation one way or the other.
Authorities have been cited to show that where a vendor has not title to all the land which he contracts to sell, the vendee may have an abatement. Of this there can be no doubt. The vendor contracts to sell an entire tract- of land, to one-half of which he has no title. In such case, as a general rule, the vendee might rescind the contract, or he might compel a specific performance, so far as the vendor can perform, and insist upon an abatement of the price as to the residue. For instance, he contracts to purchase a tract of one hundred acres, and the vendor has title to but fifty of the hundred. The vendor can be compelled to convey the fifty acres for which he has title, and he will not be allowed to receive pay for that to which he can make no title. In such case, however, the power of the court should be invoked in reasonable time.
In the case before the court, however, there was no defect of *391 title. The vendor had good title to the entire tract sold. The only difficulty is, that the quantity does not agree with the estimate.
To sustain the position assumed by complainant’s counsel, *1 Sug. Vend. 372, 373, is cited, and some of the cases to which that writer refers. It is evident that Mr. Sugden favors-the opinion advocated by complainant’s counsel, but the most that can be collected from his treatise is, that there is no settled rule upon the subject. In his section treating of defects in the quantity of the estate, and which is the section quoted by counsel, he says: “ If an estate be sold at so much per acre, and there be a deficiency in the number conveyed, the purchaser will be entitled to a compensation, although the estate was estimated at that number in an old survey.” Of this, I suppose, there can be no doubt. Ho then adds: “The rule is the same, though the land is neither bought nor sold, professedly, by the acre. The presumption is, that in fixing the price, regard was had, on both sides, to the quantity which both suppose the estate to consist of. The demand of the vendor, and the offer of the purchaser, are supposed to he influenced, in an equal degree, by the quantity which both believe to be the subject of their bargain. The general rule, therefore, is, that where a misrepresentation is made as to the quantity, though innocently, the right of the purchaser is to have what tbo vendor can give, with an abatement out of the purchase money for so much as the quantity falls short of the representation.”
In support of this position, Hill v. Buckley, 17 Ves. 391, is cited. Taking the syllabus of the case, the position is sustained. But when the case itself is examined, if will be found that a statement has been made to the purchaser as to the quantity, and a measurement furnished by the agent of the vendor, which induced the purchase, which was incorrect; but this fact was not known to either of the parties. The master of the rolls, in commenting upon the case, refers to these facts, and says : “ Where a misrepresentation is made as to quantity, though innocently, I apprehend the right of the purchaser to be, to have what the vendor can give, with an abatement out of the purchase money for so much as the quantity falls short of the representation.”
*In the case now before this court, there is no proof of any misrepresentation as to the quantity of land, but it appears that *392 the complainant, to say the least, had as much knowledge as to the quantity as tho defendant.
In tho next paragraph, Mr. Sugden says: “But where lands in a conveyance are mentioned to contain so many acres by estimation, or the words ‘more or less ’ are added, if there be a small portion more than the quantity, tho vendor can not recover it; and if there be a small quantity less, the purchaser can not obtain any compensation for the deficiency.” Thus much counsel quote, but omit what next follows in the same paragraph: “Indeed, a case is said to have been decided, where a man conveyed his land by the quantity of one hundred acres, were it ‘ more or less,’ and it was not above sixty acres; but the purchaser had no relief, because.it was his own laches,” and 2 Frum, 106, is “cited-” In this case, the comparative deficiency of land was much greater than in the case now before this court.
In the next paragraph, Mr. Sugden says: “That, however, was the case of an actual conveyance. Where the contract vests in fieri, the general opinion has boon that the purchaser, if the quantity bo considerably less than was stated, will be entitled to an abatement, although the agreement contain the words ‘more or less,’ or ‘by estimation.’ ”
Other authorities are cited, to show that a difference prevails where the contract is in fieri and where it has been executed by conveyance. Admitting that there is a difference, does the complainant come beforo the court under such circumstances as to tako advantage of it? It seems to mo not. True, he has not received a conveyance from the defendant, but he has acquired all tho title which was in the defendant, and he has acquired this title at sheriff’s sale, after neglecting to perform his own contract, by satisfying tho judgment upon which the land was sold. Had ho complied with his contract by paying off this and the other judgments, as he was bound, he might with a better face have como into this court for a specific performance, *and in such application have insisted upon an abatement.
Upon this question, whether there can be any abatement whero the land sold is described by measurements, metes, and bounds, and so far as the quantity is concerned, is sold “by estimation,” or “ for more or less,” there is much contrariety of decision, as is apparent from an examination of the authorities referred to in tho notes appended to the American edition of Sugden. No certain *393 rule seems to have been established even in England. Mr. Sugden says, on page 378 of the American edition : “But however the rule may be finally established, yet a seller, knowing the true quantity, would not be allowed to practice a fraud, by stating a false quantity, with the addition of the words ‘more or less,’or the like.” This is unquestionably correct; for these words contain no power to relieve a vendor from his own fraud, whatever that fraud may be. But where there is no fraud, no concealment, no misrepresentation, they must have some effect.
So far as my knowledge extends, the general course of decisions in this state, upon contracts for the sale of land, or for the conveyance of land, the land being described by metes and bounds, and the quantity “estimated,” or sold “for more or less,” has been, that the purchaser should take all within the prescribed bounds, although more than the estimated quantity, and that there could be no abatement should the quantity fall short. At any rate, I have never known of any such abatement. And such, I believe, has been the general current of decisions in the United States, although they are not perhaps uniform.
But, oven admitting the rule to be otherwise in some cases, is this a proper case to give this complainánt relief? What has been his conduct? He bought the land in controversy by its motes and bounds, with which he was well acquainted, and contracted to pay a gross sum for the entire tract. The payments first to be made by him were to bo applied in satisfaction of cerLain judgments which wore liens upon the land. This contract *he neglected to comply with, but suffered the land to be sold upon one of these judgments, and purchased in himself, thereby ousting the vendor of his title. Was this acting in good faith? True, he had ascertained, as ho supposed, that the land fell short of the estimated quantity. But if, in consequence of this, he felt himself aggrieved, he should at once have notified the vendor, and have requested a rescission of the contract. Possibly, had the vendor refused to have rescinded, he might have compelled it. This course, however, did not meet his approbation. He preferred, in the first place, to got the title out of the vendor’s hands through, the instrumentality of a sheriff’s sale: The reason which he assigns for this course is, that he had paid three hundred dollars, which would otherwise have been lost in consequence of the vendor’s insolvency. But although he could charge the vendor *394 in his bill with insolvency, he has not undertaken to prove the charge.
Besides, what has he lost by this contract, should he be compelled to pay the judgment? The land is proven at the time of his purchase to have been worth $3,000, irrespective of the number of acres. In the year 1843—the year before his purchase—he himself, with two other freeholders, under the solemnity of an oath, appraised it at $4,000. And in 1846, after the deficiencjr in quantity had boon ascertained, it was again ap2>raised at $3,320. The price agreed to be paid for the land, then, did not exceed its actual value, and all the defendant can lose, should he be compelled to pay the full amount of the contract price, will be the 02>portunity of acquiring a valuable farm at about $1,000 less than its worth.
It seems to the court that the equity of the case is with the defendant.
The injunction is therefore dissolved, and the bill dismissed at the complainant’s cost.